# UNITED STATES DISTRICT COURT

for the

Central District of California

FILED
CLERK, U.S. DISTRICT COURT
2/23/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: ____CGM____ DEPUTY

LODGED
CLERK, U.S. DISTRICT COURT
2/23/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: ____jb____ DEPUTY

United States of America

v.

MARIE JOO-YEON CHOI,

Defendant

Case No.   2:24-mj-01006-Duty

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date of February 22, 2024, in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii) | Possession with Intent to Distribute Methamphetamine |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

*Complainant's signature*

Nicholas B. Stirling, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   2/23/24

*Judge's signature*

City and state:   Los Angeles, California

Hon. Joel Richlin, U.S. Magistrate Judge
*Printed name and title*

AUSA: Sarah E. Spielberger (x3358)

**AFFIDAVIT**

I, Nicholas B. Stirling, being duly sworn, declare and state as follows:

## I.   PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint against Marie Joo-Yeon CHOI ("CHOI") for a violation of 21 U.S.C. § 841(a)(1): Possession with Intent to Distribute a Controlled Substance.

2. The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

## II. AFFIANT'S BACKGROUND

3. I have been employed as a Special Agent (SA) with the Drug Enforcement Administration ("DEA") since September 2019. Since August 2020, I have been assigned to the DEA's Bakersfield Resident Office in Bakersfield, California. As part of my training, I received approximately 18 weeks of training in the area of narcotics investigations at the DEA Justice Training Center in Quantico, Virginia.

4. From 2018 to 2019, I was a Border Patrol Agent and Emergency Medical Technician with the United States Border

1

Patrol stationed in Rio Grande City, Texas. As a part of that training, I received approximately twenty-five weeks of specialized federal law enforcement training at the Federal Law Enforcement Training Center in Artesia, New Mexico. This training included the detection, interdiction and apprehension of illegal narcotics crossing the border between Mexico and the United States. My training at FLETC, as well as my EMT schooling, raised my proficiency in drug identification. While working as a Border Patrol Agent, I had contact with and arrested persons under the influence of controlled substances and those who were trafficking controlled substances and seized, processed, and field-tested controlled substances.

    5. As a DEA Special Agent, I have been the case agent and assisted other agents and officers in investigations involving violations of Title 21, United States Code, Section 841(a)(1), the manufacture of, distribution of and possession with intent to distribute controlled substances; and Title 21, United States Code, Section 846, conspiracy to commit the foregoing. Specifically, those investigations have focused on the manufacture and distribution of fentanyl, marijuana, methamphetamine, heroin, and cocaine. I am familiar with, and have participated in, conventional investigative methods, including, but not limited to, electronic surveillance, visual surveillance, wiretap investigations, questioning of witnesses, search warrants, confidential informants, and pen registers. I have also become acquainted with the various methods used by

individuals to possess, transport, and sell controlled substances in violation of federal law.

6.  The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III. SUMMARY OF PROBABLE CAUSE

7.  Based on my investigation in this case, review of investigation reports, and debriefings with law enforcement officers, I am aware that on February 22, 2024, law enforcement arrested CHOI after they searched her residence pursuant to a warrant and found CHOI in possession of approximately 922.5 gross grams of suspected methamphetamine.

### IV. STATEMENT OF PROBABLE CAUSE

A.  **Background of Investigation**

8.  Based on my review of law enforcement reports, search warrant number 24-MJ-862, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

   a.  On February 15, 2024, the Honorable Michael R. Wilner signed and authorized, under seal, search warrant number 24-MJ-862, which allowed agents to search CHOI's residence at

2924 9th Avenue, Los Angeles, California, 90018 ("SUBJECT PREMISES").

b.  From on or about July 12, 2022, to on or about December 17, 2022, Kristopher THOMAS, aka "Broski" ("THOMAS"), a long-time member of the Main Street Mafia Crips[1] and an inmate at Kern Valley State Prison in Delano, California, was the head of a drug trafficking organization ("THOMAS DTO") that shipped large quantities of methamphetamine to Hawaii, Oklahoma, Alabama, and New Jersey.

c.  Electronic surveillance and prison visits have indicated that CHOI and THOMAS were romantic partners, and that THOMAS trusted CHOI with information about his drug trafficking organization.

d.  From on or about March 7, 2022, until at least August 13, 2022, CHOI served as a drug money courier for THOMAS's drug trafficking organization. For example, a confidential source working with the DEA ("CS")[2] identified CHOI

---

[1] I know, based on my training and experience in investigating drug trafficking offenses, that the Main Street Mafia Crips area street gang located on the east side of South Los Angeles.

[2] The CS has previously been arrested for robbery, assault, trespassing, illegal possession of narcotics, and unlawful transportation of a firearm. The CS was convicted of assault in 2016 and a firearms violation in 2019. The CS was arrested in July 2022 for the distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). As a result of the CS's arrest, he/she agreed to assist law enforcement, in the hopes of receiving reduced charges and/or sentencing consideration. Investigators believe the CS to be credible and reliable, in part, because the CS admitted his/her criminal conduct immediately at the time of his/her arrest, and voluntarily provided information about the
*(footnote cont'd on next page)*

as one of the money couriers he/she met with and provided large sums of cash representing monies owed for past drug debts to the THOMAS DTO on multiple occasions in Hawaii before the CS's cooperation with the federal government. Also, on August 13, 2022, agents used a wiretap on THOMAS's cellphone to intercept a call between THOMAS and CHOI wherein THOMAS directed her to pick up drug trafficking money. Lastly, CHOI made two quick roundtrips from Los Angeles to Honolulu, Hawaii, in March and April 2022 that were consistent with traveling to act as a drug money courier.

   e. Throughout the drug conspiracy, CHOI has resided at the SUBJECT PREMISES. Before the execution of the search warrant, I believed that CHOI lived at the SUBJECT PREMISES because law enforcement saw CHOI at the SUBJECT PREMISES, the SUBJECT PREMISES's Los Angeles Department of Water and Power

---

location of approximately 40 pounds of methamphetamine, which was supplied by an individual who he/she believed was Broski, an individual he/she met one time briefly in Oahu, Hawaii and who he/she believed was the supplier. Although the supplier was actually THOMAS, an inmate in a California prison, THOMAS's voice, which was recorded during conversations with the CS, sounds the same, according to the CS, as well as agents who subsequently compared these recordings with federally authorized intercepts of the contraband phones that THOMAS used in prison. Further, during conversations with THOMAS, the CS referred to THOMAS as Broski, without objection or correction. Notwithstanding the discrepancy in identities, the CS's information concerning the drug trafficking organization which supplied methamphetamine to him/her is deemed reliable, since the organization has the capability and has, in fact, supplied large quantities of methamphetamine to the CS, some of which has been seized by law enforcement. Based on the CS's assistance, law enforcement seized an additional 93 pounds of methamphetamine sourced from THOMAS. The CS was charged federally, and his/her case is pending.

records from June 2010 until present list CHOI's mother as the accountholder, and CHOI has purchased airline tickets and listed the SUBJECT PREMISES as her residence.

### B. Agents Recover Approximately Two Pounds of Suspected Methamphetamine in CHOI's Bedroom

9. Based on my investigation in this case, review of investigation reports, and debriefings with law enforcement officers, I am aware of the following:

    a. On February 22, 2024, at approximately 4:00 a.m., DEA special agents from Bakersfield and Los Angeles, Los Angeles Police Department ("LAPD") officers, and Internal Revenue Service ("IRS") special agents arrived at the SUBJECT PREMISES to execute search warrant number 24-MJ-862.

    b. At approximately 4:01 a.m., LAPD officers loudly announced their police presence and their intent to serve a search warrant.

    c. CHOI walked out the front door of the SUBJECT PREMISES shortly thereafter, and agents detained CHOI without incident. CHOI's mother was also at the SUBJECT PREMISES.

    d. Law enforcement then secured the SUBJECT PREMISES. At approximately 4:29 a.m., an LAPD K9 officer walked with his trained narcotics detection dog through the SUBJECT PREMISES. The dog did not give a positive alert indicating the presence of controlled substances anywhere in the SUBJECT PREMISES.

    e. Law enforcement then conducted a thorough search of the SUBJECT PREMISES, including a room that they believed was

CHOI's bedroom that she did not share with anyone else. Law enforcement believed that this was CHOI's bedroom because they found photographs of CHOI and THOMAS (who is currently a prison inmate) inside. Additionally, during the course of the search, DEA SA Sasha Y. Engle asked CHOI where her car keys were and CHOI said that they were in a Cartier bag hung on her bedroom door. Agents searched CHOI's bedroom and found the car keys in the place CHOI had described. After law enforcement decided to arrest CHOI for possession of narcotics with intent to distribute, CHOI went into the room that agents believed was her bedroom to change her clothes. Lastly, the only other person who appeared to live in the home was CHOI's mother, who had her own room.

      f.    During their search of CHOI's bedroom, agents found a black case against the wall on the right side of CHOI's bed. Inside the black case, agents found two plastic bags containing a white crystalline substance weighing approximately 922.5 gross grams that they believed, based on their training and experience, was methamphetamine.

      g.    On February 22, 2024, DEA SA Christian Hauser conducted a field test on the suspected narcotics, which resulted in a positive reading for methamphetamine.

7



h.	Law enforcement also found a small digital scale inside of the black case. Based on my training and experience in investigating drug trafficking offenses, I know that individuals who possess narcotics with the intent to distribute them often keep a scale with them in order to weigh their narcotics prior to sale.

i.	Law enforcement found 22 cellphones throughout the house. Specifically, they found one in a closet in the main hallway, two inside CHOI's bedroom on her bedside table, and 19 in a dresser inside a spare bedroom. Based on my training and experience, I know that drug traffickers often use cellular telephones to communicate with co-conspirators in furtherance of their money laundering activities. Based on my knowledge of the investigation and review of telephone toll records, I am also aware that CHOI used various cellphones to communicate with THOMAS in prison.

### C. CHOI's Statements

10. After agents finished searching the SUBJECT PREMISES, SA Engle and IRS SA Logan Melton interviewed CHOI after administering the Miranda warnings. CHOI initially denied any involvement in criminality. Eventually, she requested an attorney and agents finished their interview.

## V. CONCLUSION

11. For all of the reasons described above, there is probable cause to believe that CHOI has committed a violation of 21 U.S.C. § 841(a)(1): Possession with Intent to Distribute a Controlled Substance.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this __23rd__ day of
February, 2024.

_____
THE HONORABLE A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE